FRANCISCO FELICIANO, Third-party Claimant and Appellee, v. PABLO CEDEÑO, S. en C., Plaintiff and Appellant, v. LUIS FELICIANO BORRERO ET UX., Defendants and Appellees.

No. 11009. Argued February 1, 1954.—Decided February 28, 1955.

*Agustín E. Font* for appellant. *José I. Fernández Segarra* for
appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Francisco Feliciano filed a third-party claim for personal
property against Mercantil Pablo Cedeño, *S. en C.*, the attach-
ing creditor in the original action, and Luis Feliciano and
his wife, Nélida Cedeño Santiago, defendant debtors in the
original action, in which complaint Francisco Feliciano
claims the ownership of certain merchandise attached by
Mercantil Pablo Cedeño, *S. en C.*, as the property of Luis
Feliciano and his wife, Nélida Cedeño Santiago. The Mer-
cantil Pablo Cedeño, *S. en C.*, answered admitting the fact
of the attachment but alleging, on the contrary, that the
attached property belonged to Luis Feliciano and his wife,
Nélida Cedeño, who, maliciously and with intent to defraud
their creditors and by false and fraudulent pretenses, unduly
used the name of Francisco Feliciano, father of the said Luis
Feliciano, to appear as owner of the property in question.

After an exhaustive examination of the facts, the trial
court made the following findings of fact:

"1. That on March 21, 1950, the marshal of this court
executed the order of attachment of the properties described
in the complaint in civil case R–10,824 of that court, instituted
by Pablo Cedeño, *S. en C.*, against Luis Feliciano Borrero and
his wife Nélida Cedeño;

"2. That the attachment was levied on merchandise kept in
a store located on the ground floor of a house belonging to
Augusto Pierantoni;

"3. That according to a certain invoice, Francisco Feliciano
purchased from Luis Maldonado $131.44 worth of merchandise,
of which he paid $110 on March 6, 1950, record of which appears
at p. 266 of the blotter of Luis Maldonado's store and in the
corresponding notebook or invoices;

"4. That another purchase for $86.76 by the said Francisco
Feliciano from Luis Maldonado appears recorded on March 11,
1950, and at p. 269 of the blotter there also appears a charge
for a five-pound can of butter;

"5. That on March 20, 1950, two more notes appear for merchandise purchased by Francisco Feliciano, and at p. 281 there appears also record of an invoice;

"6. That Luis Maldonado's blotter discloses invoices and entries made subsequent to the attachment levied on March 21, 1950;

"7. That there also appear the originals of invoices made by Luis Maldonado to Francisco Feliciano, dated prior to March 21, 1950;

"8. That on March 16, 1950, Celso Flores sold merchandise to Francisco Feliciano which was paid for by Cruz Feliciano, who seemingly is the person in charge of the business where the property was attached; also, receipts for bread deliveries signed by Cruz Feliciano on behalf of Francisco Feliciano, who cannot read and write;

"9. The municipal license was issued on March 15, 1950, in favor of Francisco Feliciano, and, according to the proof, it was obtained by Luis Feliciano;

"10. The voucher for payment of the license was issued on March 15, 1950, in Francisco Feliciano's name;

"11. There also appear other documents such as conditional-sale contracts involving property and bills in the name of Francisco Feliciano, dated prior to March 21, 1950, in some of which codefendant Luis Feliciano, the son of plaintiff and brother-in-law of Pablo Cedeño by reason of his marriage to the latter's sister, appears as witness for the signs and/or marks made by Francisco Feliciano;

"12. That, notwithstanding Augusto Pierantoni's testimony, to which the court gave credit, his testimony was contradicted, controverted, and gainsaid by documents subscribed by him, such as the Declaration of Registration of Business Premises made on March 19, 1950, before the Office of Price Administration, whereby he leases certain premises to Francisco Feliciano; the order fixing the maximum provisional rent; and the inventory of property to be purchased by Francisco Feliciano (Exh. 11 of plaintiff), to which the court gave no credit in view of its content;

"13. That the documentary and oral evidence offered by plaintiff establishes that prior to the attachment Francisco Feliciano made purchases and established a store on the ground floor of Augusto Pierantoni's house.

"14. That although the evidence offered by defendant Pablo Cedeño, *S. en C.,* arouses suspicion of fraud or collusion, it is not sufficient at law to establish it and to enable the court to reach a conclusion thereon, in the light of the prevailing authorities, wherefore it cannot dismiss the third-party complaint."

Feeling aggrieved by the judgment rendered, the attaching creditor appealed to this Court assigning the following errors: (1) "the lower court committed manifest error in weighing the evidence," and (2) "the lower court committed manifest error in applying the case law."

■ As to the first assignment relating to the weighing of the evidence, this case involves two different versions of the facts: the version of the attaching creditor to the effect that the new establishment attached, allegedly owned by the third-party claimant, was the property of Luis Feliciano, the attachment debtor, who merely removed to the new establishment the merchandise which was stored in other establishments; and the version of the third-party claimant to the effect that he was the sole owner of the new establishment. It will be readily seen that the evidence in the instant case is most conflicting, and in deciding the same the trial court merely exercised its traditional power of giving credit to that part of the evidence which was most convincing to its conscience as a trier. The findings of fact are supported by the evidence and we cannot therefore disturb them, unless we are fully convinced that they are clearly erroneous.

■■ Regarding the second assignment relating to the correct application of the case law to the character of the evidence in the event of fraud, the same depends fundamentally on the determination of the first assignment. It is a universally recognized rule of law that fraud is never presumed, that is, that fraud can never be a matter of mere conjecture. A conjecture may be drawn from any finding contrary to its natural or logical occurrence. Where the same finding admits of two interpretations antithetical between themselves, one of them cannot be used to prove fraud.

*Calzado et al.* v. *Carrero et al.,* 15 P.R.R. 340, 344 (Mac-Leary, 1909); *Lamas et al.* v. *Roig,* 15 P.R.R. 481, 486 (Wolf, 1909); *Cruz* v. *López et al.,* 17 P.R.R. 40, 44 (Wolf, 1911); *Suc. of Igaravídez et al.* v. *Rubert Bros. et al.,* 23 P.R.R. 272, 304 (Wolf, 1915); *Ana María Sugar Co.* v. *Castro et al.,* 28 P.R.R. 225, 240, 241 (Wolf, 1920); *Heirs of Cayere* v. *Monell et al.,* 40 P.R.R. 899, 903 (*Aldrey,* 1930); *González* v. *Rivera,* 42 P.R.R. 304, 307 (Texidor, 1931); *Succrs. of L. Villamil & Co., S. en C.* v. *Pacheco,* 48 P.R.R. 826, 829 (Aldrey, 1935); *Roca* v. *Thomson* (Ortiz), 77 P.R.R.

██ But here we are not faced with that probability. The instant case involves two different facts, both established by distinct evidence, to a certain extent independent of each other, in which case the conclusion of the judge excludes not only the possibility of fraud directly established by pertinent evidence but also the fraudulent conjecture which may be drawn from the findings made by the trial judge. In order to consider the possible fraudulent implications from the facts proved in their entirety, it would be necessary to set aside the findings of fact made by the trial judge in his unfettered weighing of the evidence. Only in the event of total absence of evidence or manifest error in its weighing would we be authorized to do so.

The judgment appealed from will be affirmed.